## Commonwealth, For Use, et al. v. Southern Railway Company in Kentucky.

(Decided December 15, 1910.)

### Appeal from Mercer Circuit Court.

1. Intoxicating Liquors—Carriers—Conveying Whiskey Into Prohibited Territory—Passenger Carrying Liquors.—Section 2569 Ky. Stat. makes it unlawful for any person, corporation, public or private carrier, to bring whiskey into any county in this State where the sale of intoxicating liquors has been prohibited either by special act of the Legislature or by a vote of the people. The act pro-

vides that "the provisions of this act shall only apply to common carriers, corporations,. firms or individuals who usually carry freight or goods for hire." Held, that the act does not apply where a passenger on a railroad by virtue of his ticket is entitled to carry personal baggage and nothing in addition to the purchase price is paid for the privilege.

2.    Same—Good Faith of Carrier—Care Required—In receiving pay for carrying goods it is therefore the duty of the carrier to act in good faith and to exercise ordinary care to see that the goods received and carried into local option territory do not consist of spirituous, vinous or malt liquors.

JAS. BREATHITT, Attorney General, TOM. B. McGREGOR, Assistant Attorney General, and C. E. RANKIN for Commonwealth.

ALEX. P. HUMPHREY, E. P. HUMPHREY and E. H. GAITHER for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Law Certified.

On April 8th, 1910, the following warrant was issued against appellee, Southern Railway Company in Kentucky:

"It appearing that there are reasonable grounds for believing that the Southern Railway Company in Kentucky, a corporation, did on the 4th day of April, 1910, commit the offense of knowingly bringing and carrying as a common carrier of goods and passengers, spirituous, vinous, and malt liquors, into a local option territory committed on April 4th, 1910, by carrying and bringing six boxes or packages and three jugs for Dewitt Bonta, who was neither a licensed physician or druggist, as his personal baggage and belongings, which said packages and jugs contained more than one gallon of whiskey, being between ten and twelve gallons of whiskey into Harrodsburg, Ky., from Lawrenceburg, Ky., being brought into local option territory, the said corporation being engaged in the general business and occupation of hauling, transporting and carrying goods and passengers for hire, and having brought and carried said packages and jugs with said whiskey therein as such common carrier.

"You are therefore commanded to summon said Southern Railway Company in Kentucky to answer said charge in my court at Harrodsburg, Ky., on the 12th day of April, 1910, at two o'clock p. m.

"Witness my hand as Police Judge of Harrodsburg, Ky., this April 8th, 1910.

"J. HAL GRIMES, J. P. C. H."

Upon the hearing in the police court, appellee pleaded guilty and its punishment was fixed at a fine of $50.00. From the judgment so entered, appellee prosecuted an appeal to the circuit court. There it demurred to the warrant, but the demurrer was overruled. The case then went to trial, and upon the conclusion of the evidence for the Commonwealth the trial court peremptorily instructed the jury to find appellee not guilty. The jury returned a verdict in conformity with the instruction so given, and from the judgment based thereon the Commonwealth prosecutes this appeal for the purpose of having the law certified.

The evidence for the Commonwealth is substantially as follows:

Dewitt Bonta testified that he lived in Lawrenceburg, where he was engaged in the saloon business. On April 4th, 1910, he came to Harrodsburg as a passenger on one of appellee's trains. He had with him at the time four or five packages of whiskey, which contained three or four gallons. The shipping boxes containing the whiskey were of the kind ordinarily used for that purpose. The porter who worked at the saloon brought the packages to the depot. When witness arrived there, they were on the platform. When the train from Harrodsburg arrived the whiskey was put on the front end of the colored coach by witness' porter and a negro on the platform. Witness paid nothing for having the whiskey conveyed, but purchased and used a ticket to Harrodsburg, which cost him sixty-two cents. He had no arrangements with the railroad people about bringing the whiskey over. Did not have the whiskey checked, nor did he say anything to the agent about it. The whiskey belonged to one Mr. Bottom, and the witness was bringing it to Harrodsburg for delivery on orders.

Jesse Barbour testified that he was in Lawrenceburg on April 4th. When he first saw the packages of whiskey two of them were on a truck and two beside a truck. Afterwards, another package was placed on the platform. Was present when the packages were put on the car by two colored men whom he did not know. After the packages were put on, the train porter moved them back. The conductor told the porter not to bother with any of that whiskey that was coming on. When he reached Harrodsburg, he saw Mr. Bonta put two of the boxes off. None of the whiskey was in a grip, valise or trunk. Witness was in the colored coach, where there were six

or eight other negroes. Mr. Bonta rode in the smoking car provided for white people.

It will be observed that this proceeding was instituted under section 2569a, Ky. Stats., the provisions of which are as follows:

"It shall be unlawful for any person or persons, individual or corporation, public or private carrier, to bring into, transfer to other person or persons, corporations, carrier or agent, deliver or distribute, in any county, district, precinct, town or city, where the sale of intoxicating liquors has been prohibited, or may be prohibited, whether by special act of the General Assembly, or by vote of the people under the local option law, any spirituous, vinous, malt, or other intoxicating liquor, regardless of the name by which it may be called; and this act shall apply to all packages of such intoxicating liquors whether broken or unbroken.

"Provided, individuals may bring into such district, upon their person or as their personal baggage, and for their private use, such liquors in quantity not to exceed one gallon: And provided, the provisions of this act shall not apply to licensed physicians or druggists, to whom any public carrier may deliver such goods, in unbroken packages, in quantity not to exceed five gallons at any one time.

"2. Each package of such spirituous, vinous, malt or other intoxicating liquor, regardless of the name by which it may be called, whether broken or unbroken packages, brought into and transferred to other person, corporation. carrier or agent, delivered or distributed in such local option territory, shall constitute a separate offense.

"3. Any person or persons, individual or corporation, public or private carrier violating the provisions of this act shall be deemed guilty of violating the local option law and shall be fined not less than fifty nor more than one hundred dollars for each offense.

"4. And the place of delivery of such liquors shall be held to be the place of sale: Provided further, that the provisions of this act shall only apply to common carriers, corporations, firms or individuals who usually carry freight or goods for hire; and every firm, common carrier, corporation or individual who receives pay for conveying vinous, malt or spirituous liquors shall be deemed a violator of the provisions hereof."

The warrant charges, and the evidence shows, that the witness, Dewitt Bonta, carried the whiskey in question as his personal baggage. And for this the company received no pay in addition to the fare which Bonta paid for his ticket. By subsection 4 of the foregoing section of the statute, it is provided that the provisions of the act should apply only to common carriers, corporations, firms or individuals who usually carry freight or goods for hire, and that every firm, common carrier, corporation, or individual who receives pay for conveying vinous, malt or spirituous liquors shall be deemed a violator of the law.

Was the purchase of the ticket a receiving of pay by appellee for conveying the whiskey? We think not. The railway company received no more from the passenger because of the baggage he carried than it would have received if he had no baggage. In our opinion, the statute applies only to those cases where the common carrier actually receives pay for conveying spirituous, vinous or malt liquors. It does not apply where the passenger by virtue of his ticket is entitled to carry personal baggage and nothing in addition to the purchase price of the ticket is paid for the privilege. It was not the purpose of the act to make of the carrier an inquisitor with full power to examine and inspect the baggage of a passenger so as to determine whether or not he has whiskey concealed in the same. This would necessarily follow if the contention of the Commonwealth were upheld. In every case, except in a case where the public carrier delivers in local option territory spirituous, vinous or malt liquors in unbroken packages in quantity not to exceed five gallons at any one time to licensed physicians or druggists, the common carrier is liable to the penalty imposed by the act where it receives pay for conveying the liquor. In receiving pay for carrying goods, it is, therefore, the duty of the carrier to act in good faith and to exercise ordinary care to see that the goods received and carried into local option territory do not consist of spirituous, vinous or malt liquors.

From the foregoing it follows that the trial court properly instructed the jury to find appellee not guilty; and this opinion is certified to the proper tribunal as the law of the case.