## Martin v. Commonwealth.

(Decided May 20, 1913.)

## Appeal from Butler Circuit Court.

1.  Intoxicating Liquors—Bought in Interstate Commerce—Act of 1912.—One who buys whiskey from another in Interstate Commerce cannot be punished under the act of 1912, making it unlawful to purchase or procure for another spirituous, vinous or malt liquors.

2.  Intoxicating Liquors—Principal and Agent—Interstate Commerce —Act of 1912.—The agent who delivers to his principal the principal's own liquor, bought in Interstate Commerce, does not violate the act of 1912.

NAT T. HOWARD, E. N. MAYHUGH for appellant.

JAMES GARNETT, Attorney General, CHAS. H. MORRIS, Assistant Attorney General, E. BRADLEY and W. S. HOLMES for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

The following act was passed by the last General Assembly:

"An act making it unlawful to purchase, procure or deliver spirituous, vinous and malt liquors in local option territory.

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"1.    That it shall be unlawful for any person, firm or corporation to purchase or procure for another spirituous, vinous, malt or other intoxicating liquors, mixtures or decoctions, either as the agent of the buyer or the agent of the seller of said liquors, mixtures, or decoctions, either for or without compensation in any county, district, precinct, town or city where the sale of intoxicating liquors has been prohibited or may be prohibited, whether by special act of the General Assembly or by vote of the people under the local option law of this State.

"2.    Any person, firm or corporation violating section one of this act or any part thereof shall be fined not less than sixty dollars or no more than one hundred dollars, and not less than ten or no more than forty days imprisonment or both within the discretion of the court or jury trying the case.

"3. The provisions of this act shall not apply to common carriers who in good faith deliver intoxicating liquors, in quantities not to exceed five gallons, at one time, to regular licensed and practicing physicians and druggists in local option territory. Provided, however, that the provisions of this act shall not apply to such liquors prescribed on prescription from regular practicing physicians."

C. E. Martin was arrested under a warrant issued by the county judge charging him with violating the local option statute. On a trial before the county judge he was fined, and took an appeal to the circuit court. In the circuit court a trial by jury was waived and the case was submitted to the court under the following agreed statement of facts:

"It is agreed by and between the Commonwealth by attorney and defendant that the following are the facts in this case. A number of men above the age of 21 formulated a club or association to be known as the Recreation Club to be located in Morgantown, Butler County, Kentucky; that the prosecuting witness M, and Deft. are each members of the club. That the club rented a house of Martin, Deft., and employed him as janitor and as secretary of the club. That under the rules of the club any member of the club might keep on deposit any pure food he desired for his own use, which he was not allowed to sell or loan. That the pure food included beer and whiskey of the standard approved by the government and as pure food ices, rents janitor fee and incidental expenses to be paid out of common fund. The janitor might have on hand cigars, tobacco, lunches or any drink not containing any alcohol, own and sell same to the members of the club, but could sell no alcoholic no difference how weak. Martin was employed as secretary and janitor at a fixed salary of 30 dollars per month. The club began operation in June, 1912, and in July, 1912, M., a member of the club, went to the secretary, then acting as such, and gave him as such $2.50 and directed him to purchase for him from Cook Brewing Co., Evansville, Ind., one case of Gold Blume beer—a beer of high grade, malt liquor containing more than 2 per cent alcohol. That Martin received the money as secretary of the club, sent the order as such to the Cook Brewing Company, Evansville, Ind., and same was received by them there and a case of Gold Blume beer shipped to "Recreation Club," Morgantown, Kentucky, and C. W.

Hill, agent for the transportation company, delivered same at the rooms of the recreation Club and C. E. Martin receipted for same. It was by Martin put on ice and a book containing 48 tickets numbered from 1 to 48 consecutively was delivered to M., witness, and he called at the club room, and when he would get a bottle of beer would tear off and deliver to Martin one deposit ticket for each bottle taken. That this was all the books he kept between the parties relative to liquor deposited and here complained of and under these rules the case of beer here complained of was disposed of by M., witness, and Martin.

"That the law known as the general local option law was then in full force and effect in Butler County, Ky. The money was sent to Evansville, Ind., and goods billed to club there. The $2.50 was the wholesale price and amount sent to Brewing Company."

On these facts the circuit court held the defendant guilty as charged, and fixed his fine at $60. He appeals.

It was held in South v. Com., 79 Ky., 493, that a person is not guilty under the local option law who simply buys whiskey for another for accommodation, having no interest in the whiskey, and making no profit from the sale. This ruling has been followed in many subsequent cases. Caudill v. Com., 140 Ky., 556; Lee v. Com., 143 Ky., 355, and cases cited. It became very common in local option territory for persons not knowing how to get whiskey to procure some friend to get it for them, and this led to many persons who were in fact selling whiskey using that pretext as a defense when charged with violating the law. The primary purpose of the act above quoted was to reach this class of persons. It makes it unlawful for any person to purchase or procure for another any intoxicants either as the agent of the buyer or the agent of the seller either for or without compensation, and changes the rule which this court laid down in the cases above referred to. We also held under the original act that a gift of intoxicants in local option districts is not prohibited. (Hoskins v. Com., 102 S. W., 277; Com. v. Abbott, 147 Ky., 686). The statute above quoted was not intended to change this rule. It punishes only the persons who purchase or procure for another intoxicants, either as the agent of the buyer or the agent of the seller. The act does not interfere with the right of a person to serve wine or other intoxicants at a meal or in any

other way to give to another spirituous, vinous or malt liquors which are his own property; and what a person may do himself, he may do by his servant. The servant. who serves to the guests wine at a banquet given by his master, commits no offense under the act, which was not intended to interfere with domestic arrangements of this sort.

While the State of Kentucky may make it unlawful for any person to purchase or procure for another spirituous, vinous or malt liquors as the agent of the buyer or as the agent of the seller, it may not interfere with interstate commerce. In Robbins v. Shelby Taxing District, 120 U. S. 489, a drummer was fined under the laws of Tennessee for offering his goods for sale in that State without license. He was taking orders to be sent to Cincinnati, and there filled. It was held that the State statute interferred with interstate commerce and was void. This case was followed in Asher v. Texas, 128 U. S., 129; Brennan v. Titusville, 153 U. S., 289; Caldwell v. North Carolina, 187 U. S., 622; N. & W. R. R. Co. v. Sims, 191 U. S., 441 and many other cases. It is true that in this case Martin was not the agent of the nonresident Brewing Company, the seller of the beer, but he was the agent of the resident purchaser. If the State is without power to punish the agent of the seller because it is an interference with interstate commerce, it is equally without power to punish the agent of the buyer; for this would be equally an interference with interstate commerce. In the cases above cited, the Supreme Court of the United States distinctly holds that under the Constitution the power to regulate interstate commerce is vested alone in Congress and that the States are without power in any wise to interfere with it. If the State could punish the agent of the buyer, it could in like manner punish the buyer himself. That commerce may be carried on, there must be both a seller and a buyer and to punish either for what is done in interstate commerce, is certainly an interference with interstate commerce. We, therefore, conclude that our statute above quoted is inapplicable as to all interstate commerce transactions, and that Martin cannot be punished for anything that he did before the interstate commerce transaction was completed.

The interstate commerce transaction began with the order sent by Martin to the Brewing Company for the beer and ended with the delivery of the beer to the con-

signee at Morgantown. The beer was ordered in the name of the Recreation Club. It was shipped to the Recreation Club and was received by it. Martin was its manager and received the beer. Whose beer was it and how did Martin hold it?

The agent is only the shadow of his principal or the medium through which the transaction is had. His acts, within the scope of his authority, are the acts of the principal. Here there was no breach of instructions. When Martin received the beer, the delivery to him was a delivery to his principal and his possession was the possession of his principal. The fact that the transaction was had in the name of the Recreation Club subtracts nothing from its legal effect. This was simply the customary form of doing the business. Though the name of the principal was not disclosed, the title to the beer was not in the Recreation Club in whose name the transaction was had; for the agent is never allowed to assert title to property purchased by agreement in his own name for the principal and with his money. Where such a purchase is made by the agent in his own name without authority, the principal has an election to claim the property or to treat the agent as his debtor; but where his instructions have been followed, he has no election and the property is his. (Bishop on Contracts, 1030-1031; 1 Clark & Skiles on Agency, section 409; 31 Cyc, 1599-1600; Cushing v. Rice, 71 Am. Dec., 579; Tainter v. Lombard, 87 Am. Dec., 552, and cases cited). If the beer had been lost in transportation, or after its delivery to Martin, the loss would have fallen on the purchaser. It was his beer and if Martin had refused to deliver it to him he might on the agreed facts have recovered it.

It will be observed that although in the title of the act the word ''deliver'' is used, in the body of the act, the only thing made unlawful is the purchasing or procuring for another of intoxicants, as the agent of the buyer or the agent of the seller. The procuring and purchasing of this beer as agent for the buyer was done by Martin at Evansville, where the beer was bought. When the beer reached Morgantown and was delivered to Martin, it was delivered to him as the agent of the owner. The statute does not make it unlawful for the servant or agent of the owner of the beer to deliver or hand to him a bottle of his own beer at his request. In doing this he does not purchase or procure the beer for another as the agent of the buyer or the agent of the seller. The statute was aimed at the traffic in intoxicants, not the private use of

them. The local option law makes unlawful the sale of intoxicants; it is not intended as a sumptuary regulation to prohibit their private use or to interfere with personal habits. The act does not make unlawful the possession of liquor; it only makes unlawful the possession for the purpose of sale.

We, therefore, conclude that on the agreed facts, the court should have entered a judgment in favor of the defendant. But if it appeared that the tickets given for beer were traded around among the members of the club, and that one member would pay back when he got a shipment what he had previously used out of another member's shipment, or if it appeared that beer out of this shipment was delivered to any member of the club who had tickets for beer bought by him, or that this beer was not treated strictly as the sole property of the member purchasing it, a different question would be presented.

Judgment reversed and cause remanded for further proceedings consistent herewith.