## Adams Express Company v. Commonwealth.

(Decided June 17, 1913.)

### Appeal from Whitley Circuit Court.

1. Intoxicating Liquors—Unlawful for Carrier to Deliver Intrastate Shipment in Local Option Territory.—A carrier that brings into or delivers in local option territory intoxicating liquor as an intrastate shipment violates section 2569-a of the Kentucky Statutes, and may be punished thereunder.

2. Intoxicating Liquors—When Unlawful for Carrier to Deliver as an Interstate Shipment in Local Option Territory.—Since the enactment of the Congressional legislation known as the Webb-Kenyon law, a carrier that brings into and delivers in local option territory an interstate shipment of liquor may be punished under section 2569-a of the Kentucky Statutes, if the whiskey is intended by any person interested therein, to be received, possessed, sold or in any manner used in violation of the law in force at the place of delivery, but if the liquor was not intended to be so used, then the carrier cannot be punished.

3. Intoxicating Liquors—Webb-Kenyon Law—Purpose and Effect of. —The purpose of the Act of Congress known as the Webb-Kenyon Law was to withdraw from interstate shipments of liquor the protection theretofore afforded by the commerce clause of the Federal Constitution as to such shipments of whiskey as are intended by any person interested therein to be received, possessed, sold or in any manner used in violation of the law at the place where it is delivered to the consignee. But if the liquor is not intended to be so received, possessed or used, then the Webb-Kenyon Law is not applicable to the transaction and the carrier will be protected by the commerce clause.

4. Intoxicating Liquors—When Carrier of Interstate Shipment Protected by Commerce Clause of Federal Constitution.—A carrier of interstate shipment of intoxicating liquor cannot be punished under any statute of the state unless the liquor was intended to be received or used in violation of some law of the State in force at the place of delivery.

5. Intoxicating Liquors—Personal Use or Possession for Such Use Not Unlawful.—It is not unlawful for a person to purchase for his own use, at places where it may be lawfully sold, intoxicating liquor, or have such liquor in his possession for such use, and a

carrier who delivers to a person for his personal use an inter-state shipment of liquor that was purchased at the place of ship-ment does not violate any law of this State.

6. Intoxicating Liquors—Indictments Against Carrier for Delivering in Violation of Law.—If the state law prohibits the thing the car-rier has done, the indictment should charge in appropriate words a violation of the state law under which the prosecution is in-stituted, and then if the Webb-Kenyon Act is applicable to the transaction when treated as an interstate shipment, a conviction may be had upon sufficient evidence that the state law has been violated.

7. Intoxicating Liquors—Validity of Section 2569-a of Kentucky Statutes.—This section is valid in every state of case when ap-plied to intrastate shipments, but is invalid when applied to interstate shipments, unless the interstate shipment is intended to be received or used in violation of some law of the state.

LAWRENCE MAXWELL, JOSEPH S. GRAYDON and TYE & SILER for appellant.

JAMES GARNETT, Attorney General, JOSEPH B. SNYDER, Commonwealth's Attorney and J. C. BIRD, County Attorney for appel-lee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Several separate indictments were returned in the Whitley Circuit Court against the Adams Express Com-pany, a common carrier of goods, charging it with the offense of bringing into local option territory, in Whit-ley County, intoxicating liquor, and delivering the same in such territory to the persons named in the indict-ments as the consignees, one of these persons being Jim Prewitt. The indictments were found under section 2569a of the Kentucky Statutes, providing in part that:

"It shall be unlawful for any person or persons, in-dividual or corporation, public or private carrier to bring into, transfer to other person or persons, corpora-tions, carrier or agent, deliver or distribute, in any county, district, precinct, town or city, where the sale of intoxicating liquors has been prohibited, or may be prohibited, whether by special act of the General As-sembly, or by vote of the people under the local option law, any spirituous, vinous, malt or other intoxicating liquor, regardless of the name by which it may be called; and this act shall apply to all packages of such intoxicat-ing liquors whether broken or unbroken.

"Provided individuals may bring into such district, upon their person or as their personal baggage, and for

their private use, such liquors in quantity not to exceed one gallon. *And provided,* the provisions of this act shall not apply to licensed physicians or druggists, to whom any public carrier may deliver such goods, in unbroken packages, in quantity not to exceed five gallons at any one time.''

An agreed state of facts was made up between the Commonwealth and the Express Company, in which it was stipulated in substance that the intoxicating liquor that the Express Company, a common carrier, was indicted for carrying into and delivering in local option territory in this state, was carried by it in the usual course of business from a point in the state of Tennessee, at which place it was received by the carrier for shipment to the consignees. It was further stipulated that the liquor had theretofore been purchased by the consignees at the place in Tennessee from which it was shipped, and the purchase price had been paid by the consignees to the seller and consignor of the liquor at his place of business in Tennessee before the liquor was delivered to the carrier. It was further stipulated that the liquor was delivered by the carrier in local option territory to the persons named as consignees, who were the same persons who had purchased and paid the seller for the liquor in the state of Tennessee before it was delivered by the seller to the carrier for shipment to the consignees who had so purchased it; and that the shipments took place after the Act of Congress known as the Webb-Kenyon Law had gone into effect.

And it was further stipulated that ''said liquors were intended by said consignees, respectively, for their personal use, and were so used by them ,and were not intended by them to be sold contrary to law, and were not so sold by them. That said consignees, being the persons named as witnesses in said indictments, were not at the times referred to in this stipulation either druggists or physicians.''

Upon this agreed state of facts, the trial court, after refusing the request of the defendant to direct a verdict in its favor, instructed the jury in substance that at the times mentioned in the agreed state of facts Whitley County was what is commonly known as local option territory, and it was unlawful to sell, give or procure for or furnish to another any spirituous, vinous or malt liquors therein, and if they believed from the evidence that the defendant, Adams Express Company, as a com-

mon carrier brought into Whitley County and there delivered to Jim Prewitt, the person named in the indictment, any spirituous, vinous or malt liquors, they should find it guilty and fix its punishment at any fine not less than fifty dollars nor more than one hundred dollars, in their discretion according to the proof.

Under the evidence and instructions the jury found the defendant guilty and fixed its punishment in the case we have before us at a fine of one hundred dollars. From the judgment entered on the verdict of the jury, this appeal is prosecuted by the Adams Express Co., and a reversal of the judgment asked upon the following grounds: (a) that the Act of Congress known as the Webb-Kenyon Law is unconstitutional and void; (b) because the indictment is fatally defective in failing to charge that the liquors in question were intended to be possessed, sold or in some manner used by the consignee in violation of the laws of the state; (c) because section 2569a of the Kentucky Statutes, under which the indictment was found, is unconstitutional when attempted to be applied to interstate shipments of intoxicating liquor; (d) if the Webb-Kenyon law should be treated as a valid enactment, it is not applicable to the facts of this case, and this being so, the Express Company did not commit any offense punishable under the laws of this state.

At the outset it is agreed by counsel for the Commonwealth that, except for the enactment of the Congressional legislation known as the Webb-Kenyon Law, the Express Company, as a common carrier, could not be punished under section 2569a of our statute for carrying intoxicating liquor from a point in the state of Tennessee into territory in this state in which the sale of such liquor is prohibited by law and delivering it under the circumstances set out in the agreed state of facts, as this statute was expressly declared by the Supreme Court of the United States in Louisville & Nashville Railroad Company v. Cook Brewing Company, 223 U. S., 70, to be inoperative when attempted to be applied to interstate shipments of intoxicating liquor, although it was and is effective in its application to intrastate shipments of such liquor.

In the case mentioned, the Cook Brewing Company, an Indiana corporation engaged in business at Evansville, Indiana, tendered to the Louisville & Nashville Railroad Co., a common carrier of goods, a quantity of beer consigned to a point in the state of Kentucky in

which the local option law was in force. The railroad company having in mind section 2569a of the Kentucky Statutes, and not wishing to violate it, declined to carry the beer, and thereupon the Cook Brewing Company brought a suit to compel the railroad company to carry it. Holding that the carrier could not decline to receive, carry or deliver the beer, the Supreme Court, after setting out section 2569a of the statute, said:

"The legality of the attitude of the railroad company toward interstate shipments of intoxicating liquors to local option points in Kentucky must turn upon the validity of that legislation as applied to interstate shipments.

"By a long line of decisions, beginning even prior to Leisy v. Hardin, 135 U. S., 100, 34 L. Ed., 128, it has been indisputably determined:

"a. That beer and other intoxicating liquors are a recognized and legitimate subject of interstate commerce;

"b. That it is not competent for any state to forbid any common carrier to transport such articles from a consignor in one state to a consignee in another;

"c. That until such transportation is concluded by delivery to the consignee, such commodities do not become subject to state regulation, restraining their sale or disposition. * * *

"Valid as the Kentucky legislation undoubtedly was as a regulation in respect to intrastate shipment of such articles, it was most obviously never an effective enact-. ment in so far as it undertook to regulate interstate shipments to dry points. Pending this very litigation, the Kentucky Court of Appeals, upon the authority of the line of cases above cited, reached the same conclusion. Cincinnati, N. O. & T. P. R. Co. v. Commonwealth, 126 Ky., 563.

"The obligation of the railroad company to conform to the requirements of the Kentucky law, so far as that law prohibited intrastate shipments, is clear, and to this extent its circular notification was commendable. But the duty of this company, as an interstate common carrier for hire, to receive for transportation to consignees upon its line in Kentucky from consignors in other states, any commodity which is an ordinary subject of interstate commerce and such transportation, could not be prohibited by any law of the state of such consignee, in as much as any such law would be an unlawful regula-

tion of interstate commerce, not authorized by the police power of the state. It is obvious, therefore, that in so far as the Kentucky Statute was an illegal regulation of interstate commerce, it neither imposed an obligation to obey, nor affords an excuse for refusal to perform the general duty of the railroad company as a common carrier of freight."

This court, in Cincinnati, New Orleans & Texas Pacific Railway Co. v. Commonwealth, 126 Ky., 563, and many other cases, has also ruled that section 2569a was ineffective to interfere with or prohibit interstate shipments of liquor. In view of these decisions, it is at once apparent, as conceded by the Commonwealth, that before the enactment of the Webb-Kenyon Law, the Express Company as a common carrier could not be punished for doing the acts described in the agreed state of facts.

It is, however, insisted for the Commonwealth that the Webb-Kenyon Law has withdrawn from interstate shipments of intoxicating liquors consigned to local option territory in this state the protection previously afforded to such shipments by the commerce clause of the Federal Constitution, and consequently section 2569a is now as much applicable to interstate as it is to intrastate shipments, and equally effective to prevent both. While counsel for the Express Company, as one of the arguments for reversal, take the position that the Webb-Kenyon Law is unconstitutional, and this being so, conditions in respect to interstate shipments of intoxicating liquor are the same now as they were before the passage of this Act, and the Express Company should therefore under the authority of the cases cited, have been acquitted of the charge against it.

Much is said in argument touching the validity of the Webb-Kenyon Law, but as we have reached the conclusion that the prosecution against the Express Company must fail because this legislation is not applicable under the agreed facts to the transaction for which the Express Company was indicted we are disinclined to consider the question of its constitutionality. The Supreme Court of the United States is the only tribunal having final jurisdiction to pass on the validity of Congressional legislation, and any opinion we might express would not carry with it the authority of a conclusive judgment.

We will, therefore, in disposing of the case, treat this legislation as valid and pass to the consideration of other grounds urged for reversal.

The Webb-Kenyon Law is entitled "An Act divesting intoxicating liquors of their interstate character in certain cases," and. provides "that the shipment or transportation, in any manner or by any means whatsoever, of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, from one State, Territory, or District of the United States, or place non-contiguous to but subject to the jurisdiction thereof, into any other S tate, Territory, or District of the United States, or place non-contiguous to but subject to the jurisdiction thereof, or from any foreign country into any State, Territory, or District of the United States, or place non-contiguous to but subject to the jurisdiction thereof, which said spirituous, vinous, malted, fermented, or other intoxicating liquor is intended by any person interested therein, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such State, Territory, or District of the United States, or place non-contiguous to but subject to the jurisdiction thereof, is hereby prohibited."

As the indictment simply charged in apt terms an offense under section 2569a, and did not in any manner refer to the Webb-Kenyon Law, or aver that the liquor received by the consignee was intended by him, or by any person interested therein, to be received, possessed, sold or in any manner used in violation of the local option law in force at the place where it was delivered to the consignee, it is urged that the indictment is defective. The argument being that as the Webb-Kenyon Law is relied on as an essential element in if not the basis of the prosecution, the indictment should have charged that the liquor in question was intended by some person interested therein, naming him, to be either received, possessed, sold or in some manner used in violation of the laws of this state.

The objection to the indictment is not, in our opinion, well taken. It was not necessary to refer to the Webb-Kenyon Law or incorporate in the indictment any of its provisions. The offense, if any, committed by the carrier, consisted in violating section 2569a of our statute. The Webb-Kenyon Law does not undertake to create or describe any offense against the laws of the state. It merely withdraws the protection theretofore afforded by the laws of the United States to certain specified articles of commerce, and permits the state

laws to become operative as to these articles. It is not in any sense a penal statute, and under it alone no punishment can be inflicted. Therefore, when a state has enacted a statute making it unlawful for a common carrier to bring into local option territory intoxicating liquor, the state law furnishes the sole basis upon which a prosecution against the carrier may be instituted. If the state law prohibits the thing that the carrier has done, the indictment should charge in appropriate words a violation of the state law under which the prosecution is instituted, and then if the Webb-Kenyon Act is applicable to the transaction when treated as an interstate shipment, a conviction may be had upon sufficient evidence that the state law has been violated.

Another ground of reversal relied on is that section 2569a was unconstitutional when enacted as applied to interstate shipments of intoxicating liquor, and this being so, life or validity was not imparted to this statute by the enactment of the Webb-Kenyon Law. The error in this argument consists in the assumption that section 2569a has been declared unconstitutional. It will be readily conceded that if any time prior to the enactment of the Webb-Kenyon Law section 2569a had been declared unconstitutional either by this court or the Supreme Court of the United States, the enactment of the Webb-Kenyon Law could not restore validity to it. But neither this court nor the Supreme Court of the United State has ever held that section 2569a was unconstitutional. On the contrary, we have in several cases upheld its validity. Adams Express Co. v. Com., 129 Ky., 420; Com. v. Southern Railway Company in Kentucky, 141 Ky., 353; Commonwealth v. L. & N. Railroad Co., 140 Ky., 21.

In the case of L. & N. Railroad v. The Cook Brewing Co., the Supreme Court of the United States did not declare this statute unconstitutional, but merely held that it was inoperative when attempted to be applied to interstate shipments, ruling that these shipments were protected by the commerce clause of the Federal Constitution, and, therefore, could not be interfered with or obstructed by state legislation. The purpose, and the only purpose, of the Webb-Kenyon Law, as we have heretofore stated, was to withdraw from interstate shipments of intoxicating liquor the complete protection it had under the principle announced in the Cook Brewing Co. case, as well as in many other cases, and assuming as we

do that the Webb-Kenyon Law is valid legislation, there can be no doubt that section 2569a is operative when applied to intoxicating liquor that is shipped as an interstate transaction to a consignee living in local option territory in this state to be received, possessed, sold or in any manner used in violation of any law of this state. If, however, the liquor is not intended by any person interested therein to be received, possessed, sold or in any manner used in violation of the laws of this state, then, notwithstanding the Webb-Kenyon Law, its carriage and delivery is as fully protected by the commerce clause of the Federal Constitution as it was before the enactment of the Webb-Kenyon Law.

This law specifies with particularity the character of transaction designed to be taken from under the protection of the commerce clause, and manifestly it was not intended by it to remove this protection from any other character of shipment. In other words, if the transaction comes within the scope of the Webb-Kenyon Law, the commerce clause of the Federal Constitution affords no protection from prosecution instituted under the laws of the state, but if the transaction does not come within the scope of this law, then the commerce clause of the Federal Constitution is equally as effective in its protection of carriers as it was before the enactment of this law.

Before this law was enacted the carrier was under a duty to and might be compelled to carry as an interstate shipment liquor and deliver the same in local option territory without regard to the use to which the consignee intended to put it. In respect to interstate shipments, the individual who purchased it to use in violation of law and the citizen who procured it for his personal use occupied the same attitude. The commerce clause of the Federal Constitution afforded to the carrier in its dealings with each precisely the same measure of protection, and this was true although the carrier might have notice that the liquor was intended by the consignee to be used in violation of the laws of the state.

But under the operation of the Webb-Kenyon Law the boot-legger and the citizen who purchase liquor in other states and have it delivered in this state by a carrier, one for unlawful, the other for lawful purposes, do not occupy the same position, nor is the duty and immunity of the carrier the same in respect to each. The commerce clause of the Federal Constitution does not

now afford to the carrier the complete protection it formerly did. The carrier must now, if it wishes to avoid being prosecuted, take notice of the use to which it is intended to put the liquor, and if this use will violate the law of the state at the place of delivery, the carrier may refuse to receive the shipment, or having received it, may refuse to deliver it.

In short the carrier, in bringing into and delivering intoxicating liquor at places where its sale is forbidden, or at places where the local option law is in force, does so at its peril, and takes the risk of being prosecuted and punished under section 2569a, if the liquor is intended by any person interested therein to be received, possessed, sold or in any manner used in violation of the laws of the state. This, however, is not to be construed into an expression of opinion that in prosecutions under section 2569a the burden of proof is on the carrier to show that the consignee intended to use the liquor in a lawful manner, as there is no issue in this record as to the burden of proof or the quantity of evidence necessary to sustain a judgment of conviction.

This brings us to consider more in detail the question whether the transaction for which the Express Company was punished was prohibited by the Webb-Kenyon Law, and its solution depends, as we have indicated, on the purpose for which the liquor was intended to be received, possessed and used. Looking again to the agreed state of facts we find that "said liquors were intended by said consignees, respectively, for their personal use, and were not intended by them to be sold contrary to law, and were not so sold by them."

This being the purpose for which the liquor was intended to be received, possessed and used, it is clear that the consignees who received from the carrier the liquor did not, in so doing, violate or intend to violate any law of this state, because there is not and never has been any law of this state that prohibited the citizen from purchasing, where it was lawful to sell it, intoxicating liquor for his personal use, or from having in his possession for such use liquor so purchased. Calhoun v. Commonwealth, 154 Ky., 70; Martin v. Commonwealth, 153 Ky., 784. As said in Commonwealth v. Campbell, 133 Ky., 50.

"The history of our state from its beginning shows that there was never even the claim of a right on the part of the Legislature to interfere with the citizen using

liquor for his own comfort, provided that in so doing he committed no offense against public decency by being intoxicated; and we are of opinion that it never·has been within the competency of the Legislature to so restrict the liberty of the citizen, and certainly not since the adoption of the present Constitution. The Bill of Rights, which declared that among the inalienable rights possessed by the citizens is that of seeking and pursuing their safety and happiness, and that the absolute and arbitrary power over the lives, liberty, and property of freeman exists nowhere in a republic, not even in the largest majority, would be but an empty sound if the Legislature could prohibit the citizen the right of owning or drinking liquor, when in so doing he did not offend the laws of decency by being intoxicated in public. * *. * Therefore the question of what a man will drink, or eat, or own, provided the rights of others are not invaded, is one which addresses itself alone to the will of the citizen. It is not within the competency of government to invade the privacy of a citizen's life and to regulate his conduct in matters in which he alone is concerned, or to prohibit him any liberty the exercise of which will not directly injure society.''

We may also here observe that the history of the Webb-Kenyon Law, the causes that led to its enactment and the evils it was intended to remedy, taken in connection with the carefully chosen words of the Act, show that the object was to aid the states in suppressing the illegal traffic in intoxicating liquors that they had been much hindered in doing by the protection afforded violators of the law by the commerce clause·of the Federal Constitution, and that it was not meant by this legislation to in any manner abridge the personal liberty of the citizen in the right to personally use liquor, or the right to have it in his possession for such use.

It is, however, insisted for the Commonwealth that, although the consignee of the whiskey in this case may have received it for a lawful purpose, it was nevertheless a violation of law for the carrier to deliver it to him. The argument in this behalf being that as section 2569a makes it unlawful for a carrier to bring into or deliver in local option territory any intoxicating liquors, subject to the exception mentioned in the section, the fact that the person to whom the liquor is delivered intends to possess and use it lawfully, does not excuse the carrier

from doing a thing that is forbidden by the law of the state as expressed in this section.

This argument being rested on the proposition that as it would be unlawful for a carrier, as an intrastate transaction, to deliver this liquor, the Webb-Kenyon Law makes the delivery of it by the carrier unlawful, although it be an interstate transaction, as both interstate and intrastate shipments are now on the same footing and are to be treated precisely alike. In short, it is said that in every case in which it would be unlawful for a common carrier to receive for shipment liquor at a point in this state where it might be sold, and carry and deliver it to the consignee at a point in this state where its sale was prohibited, it would also be unlawful for a common carrier to receive it for shipment at a point outside of the state and deliver it to the consignee at a point in this state where the sale of liquor was prohibited.

We do not, however, agree with counsel for the Commonwealth in this broad statement of the effect of the Webb-Kenyon Law. There is the same distinction now that there was before the enactment of this law between intrastate and interstate shipments of liquor, except when the interstate shipments come within the prohibition of the Webb-Kenyon Law. It does not follow that because it would be unlawful for a carrier to deliver liquor as an intrastate transaction that it would also be unlawful for it to deliver, under like circumstances, liquor as an interstate transaction.

For example, we held in Adams Express Co. v. Commonwealth, 129 Ky., 420, that under section 2569a a common carrier was forbidden to carry liquor from a point in this state at which it might be lawfully purchased to a point in the state where the local option law was in force and there deliver it to the consignee; and the validity of this statute as applied to intrastate transactions was recognized by the Supreme Court of the United States in the Cook Brewing Co. case. But we have also held in C., N. O. & T. P. Ry. Co. v. Commonwealth, 126 Ky., 563, and many other cases, as did the Supreme Court in the Cook Brewing Co. case, that section 2569a was inoperative when attempted to be applied, under like circumstances, to intrastate transactions.

It, therefore, appears that the issue in this case really comes down to this, was the liquor involved in this transaction intended by any person interested therein to be received, possessed, sold or in any manner used in vio-

lation of any law of this state? It is shown by the agreed state of facts, when considered in the light of the Constitution and laws of the state, and the opinions of this court, that it was not.

This being true the aid of the Webb-Kenyon Law cannot be invoked to secure the punishment of the carrier as it does not prohibit a common carrier from receiving, carrying and delivering, as an interstate transaction, intoxicating liquor to the consignee when it is not intended by any person interested therein to be received, possessed, sold or in any manner used in violation of the laws of this state, or withhold from such a transaction the protection afforded by the commerce clause of the Federal Constitution. As to this character of transaction the Webb-Kenyon Law has no application, and having no application, the law, as it existed before the enactment of this legislation, is in force, and being in force, the carrier cannot be punished for receiving, carrying and delivering, as an interstate transaction, intoxicating liquor in local option territory to a consignee who purchased it at a point in another state, and when it is not intended by any person interested therein to be received, possessed, sold or in any manner used in violation of the law of this state.

If, however, the liquor is intended to be received, possessed, sold or in any manner used in violation of the law of this state, then the Webb-Kenyon Act applies, although the transaction may be an interstate one, and the carrier is not protected from the punishment imposed by section 2569a of the statute by the commerce clause of the Federal Constitution under which it would have been exempt from punishment before the enactment of the Webb-Kenyon Law, which was intended to and does withdraw from the character of shipments therein mentioned the protection theretofore afforded by the commerce clause.

The result of our views on the whole case is, that whether a carrier of an interstate shipment of liquor subjects itself to punishment or not depends on the use to which the person to whom it delivers liquor intends to put it. If this use violates a law of the state, then the carrier may be punished; if it does not, the carrier has not committed any offense.

A further result is that the guilt or innocence of the carrier becomes in each case a question of fact to be de-

termined as are other disputed issues of fact under our law.

For the reasons indicated, the trial court should have directed a verdict for the defendant.

Wherefore, the judgment is reversed, with directions to proceed in conformity with this opinion.

Whole court sitting except Judge Nunn, absent on account of sickness.