## Adams Express Company v. Crigler & Crigler Company.

(Decided November 18, 1914.)

### Appeal from Kenton Circuit Court
### (Criminal, Common Law and Equity Division).

1.  Statutes.—The object in construing a statute is to arrive at the intention of the Legislature.

2. Statutes—Intent.—Where a statute repealed all former laws within its purview, the intention is obvious, and is recognized to sweep away all existing laws upon the subjects with which the repealing act deals.

3. Statutes.—If a subsequent statute requires the same, and also more than a former statute had made sufficient, this is in effect a repeal of so much of the former statute as declares the sufficiency of what it prescribes.

4. Intoxicating Liquors—Statutes.—Section 2569a of the Kentucky Statutes, which prohibited the shipment of intoxicating liquors from a "wet" point within the State to a "dry" point within the State, was repealed by the Act of March 8, 1914, entitled "An Act prohibiting the shipment of liquors for sale in local option territory, and prohibiting persons from having in possession for sale liquors in such territory," which permitted the shipment of liquors from "wet" territory within the State into "dry" territory within the State, for personal use, and upon the conditions therein prescribed.

LAWRENCE MAXWELL and JAMES S. GRAYDON for appellant.

JACKSON & WOODWARD for appellee.

JAMES GARNETT, Attorney General, for the Commonwealth.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This action was instituted in the Kenton Circuit Court by The Crigler & Crigler Company, a corporation engaged in the sale of liquor, at Covington, Ky., to obtain a mandatory injunction requiring the Adams Express Company, a common carrier, to receive a package containing eight quarts of whiskey consigned by The Crigler & Crigler Company to F. M. McKee, at Williamsburg, in Whitley County, Kentucky. The shipment was tendered in Kenton County, where the local option law is not in force; but Whitley County being local option territory, the express company refused to accept the shipment.

The chancellor granted the injunction, and required the express company to receive and ship said package as tendered; and from that judgment the express company prosecutes this appeal.

In order to obtain a full and correct understanding of the question presented for decision, it becomes necessary to refer briefly to the legislation upon the subject.

In 1906, the Legislature passed an Act now known as Section 2569a of the Kentucky Statutes, the part thereof material to this discussion reading as follows:

"It shall be unlawful for any person or persons, individual or corporation, public or private carrier to bring into, transfer to other person or persons, corporations, carrier or agent, deliver or distribute, in any county, district, precinct, town or city, where the sale of intoxicating liquors has been prohibited, or may be prohibited, whether by special act of the General Assembly, or by vote of the people under the local option law, any spirituous, vinous, malt or other intoxicating liquor, regardless of the name by which it may be called; and this act shall apply to all packages of such intoxicating liquors whether broken or unbroken.

"Provided individuals may bring into such district, upon their person or as their personal baggage, and for their private use, such liquors in quantity not to exceed one gallon: And provided, the provisions of this act shall not apply to licensed physicians or druggists, to whom any public carrier may deliver such goods, in unbroken packages, in quantity not to exceed five gallons at any one time."

It will be observed that while this section makes it unlawful for a common carrier to transport liquor into prohibition territory, it permits the individual to carry not exceeding one gallon of liquor upon his person, or as his personal baggage, for his private use. The statute has been upheld by this court in many cases, and particularly in Adams Express Co. v. Commonwealth, 129 Ky., 420; Commonwealth v. L. & N. R. R. Co., 140 Ky., 21; Commonwealth v. Southern Railway Co., 141 Ky., 353; and Adams Express Co. v. Commonwealth, 154 Ky., 462.

Section 2569a does not, however, apply to interstate shipments of intoxicating liquors because of the provision of the Federal Constitution, which gives to Congress the exclusive control over interstate commerce. It does apply, however, to intrastate shipments of liquor. C. N. O. & T. P. R. R. Co. v. Commonwealth, 126 Ky., 563; Adams Express Co. v. Commonwealth, 129 Ky., 420.

Under this statute no intoxicating liquor could be shipped into any prohibition territory within the State, except shipments that were made from points in other States; and those shipments were permitted, not by reason of Section 2569a, *supra,* but because of the fact that said section could not prevent interstate shipments of liquor, which are controlled by the Federal Constitu-

tion and laws having exclusive control over interstate commerce.

But, on February 28, 1913, the Congress of the United States passed what is known as the Webb-Kenyon Law, which withdrew from interstate shipments of intoxicating liquors consigned to local option territory the protection previously afforded to such shipments by the commerce clause of the Federal Constitution. This congressional enactment made Section 2569a of the Kentucky Statutes equally applicable to interstate and to intrastate shipments, it being equally effective to prevent either. Adams Express Co. v. Commonwealth, 154 Ky., 467.

After the passage of the Webb-Kenyon Act above referred to, there came before this court the case of the Adams Express Co. v. Commonwealth, 154 Ky., 462, in which it was held that the Webb-Kenyon Law of Congress, when read in connection with Section 2569a, *supra,* did not prohibit the shipment of liquor from another State into dry territory within this State, when such liquor was for the personal use of the consignee. It further held, however, that Section 2569a of the Kentucky Statutes still remained in full force as to intrastate shipments, and prohibited the shipment of liquor from "wet" territory within the State to a point situated in "dry" territory within the State.

In reaching that conclusion in Adams Express Co. v. Commonwealth, 154 Ky., 473, this court said:

"There is the same distinction now that there was before the enactment of this law between intrastate and interstate shipments of liquor, except when the interstate shipments come within the prohibition of the Webb-Kenyon Law. It does not follow that because it would be unlawful for a carrier to deliver liquor as an intrastate transaction that it would also be unlawful for it to deliver, under like circumstances, liquor as an interstate transaction.

"For example, we held in Adams Express Co. v. Commonwealth, 129 Ky., 420, that under Section 2569a a common carrier was forbidden to carry liquor from a point in this State at which it might be lawfully purchased to a point in the State where the local option law was in force and there deliver it to the consignee; and the validity of this statute as applied to intrastate transactions was recognized by the Supreme Court of the United States in the Cook Brewing Co. case. But we

have also held in C., N. O. & T. P. Ry. Co. v. Commonwealth, 126 Ky., 563, and many other cases, as did the Supreme Court in the Cook Brewing Co. case, that section 2569a was inoperative when attempted to be applied, under like circumstances, to intrastate transactions.''

The next to the last word in the foregoing quotation is evidently a typographical error, since the context shows that ''interstate'' and not ''intrastate'' transactions are there referred to.

The result of the Webb-Kenyon Law, when taken in connection with Section 2569a of the Kentucky Statutes, was, that interstate shipments of liquor for personal use could be sent into local option territory within this State, but that intrastate shipments of liquor for personal use could not be so sent. In other words, a liquor dealer in Ohio could ship liquor into local option territory in Kentucky for the personal use of the consignee, but a liquor dealer in Kentucky, although authorized to sell liquor in the particular locality wherein he did business, could not ship liquor for the personal use of the consignee, into local option territory within this State, because the carriers were expressly forbidden to transport it by Section 2569a of the Kentucky Statutes.

The Adams Express Company case last above referred to was decided in June, 1913. With the law in this condition, the Legislature of 1914 passed an Act, which was approved March 8th of that year, and entitled ''An Act Prohibiting the Shipment of Liquors for Sale in Local Option Territory, and Prohibiting Persons from Having in Possession for Sale Liquors in Such Territory.'' Acts 1914, page 25.

The first section of that act provides that the fact that a person in local option territory had paid the United States internal revenue tax shall be evidence of his intent to violate the prohibition laws of this State; provided, however, that none of the provisions of said section should apply to any druggist authorized to sell liquor for medical, chemical, scientific, or sacramental purposes, nor to wholesale dealers, brewers, or distillers engaged in the manufacture of such liquors in said prohibition territory.

Said first section further provides:

''And it shall be unlawful for any person to pay for, sell, furnish, or knowingly deliver, ship, or in any man-

ner transport to any such person as first above mentioned in this section or his agent, or any minor, any of the liquors heretofore mentioned.''

The second section of said Act of 1914 is the material one in this conection, and reads as follows:

''It shall be unlawful for any person to consign, ship or transport in any manner whatsoever, or deliver any of the liquors mentioned in Section 1 of this act to any person in any county, district, precinct, town or city where by law sale of such liquors is prohibited, or for any person residing in such prohibited territory to receive any such liquors, unless there appears upon the outside of the package containing any such liquors, except such as may be received by distillers, brewers, or wholesale liquor dealers, the following information: Name and address of the consignor, name and address of the consignee, and the statement either that such liquors are for personal and family use of the consignee, or for medicinal, mechanical, chemical or sacramental purposes. Any consignee receiving any package containing such liquors upon which appears a false statement, or any person consigning, shipping, transporting or delivering any such package, knowing that said statement appearing upon the outside thereof is false, shall be deemed guilty of violating the provisions of this act.''

Section 3 requires the carrier to keep at its local office in prohibition territory, a separate book, in which shall be entered immediately upon receipt of the liquor, truthful statements of the amount and kind of liquor received, the name and address of the consignor, the name and address of the consignee, the purpose for which said liquor is intended to be used as stated upon the outside of the package, the date when received, the date when delivered, and by whom and to whom it was delivered. The consignee, by himself or his agent, must sign his true name to the statement above required, before the carrier will be allowed to deliver the liquor to the consignee. Said book is open to public inspection at any time during the business hours of the company, and shall constitute *prima facie* evidence as to the facts therein stated, in any court in this Commonwealth. A failure to make the entry above required, or the making of a false entry in said book, is made a misdemeanor, punishable by a fine of not less than $50.00 nor more than $200.00, or imprisonment in the county jail for not less than

thirty days nor more than six months, or by both such fine and imprisonment in the discretion of the jury.

Section 4 provides that liquor shall not be kept by any such person in his possession, except in his private residence, making the usual exemption as to druggists, distillers, &c.; and, Section 5 says all liquor shipped contrary to the provisions of the Act shall be deemed contraband.

Section 6 provides that the word "person" as used in the Act shall include any individual, firm, co-partnership, or corporation, or any combination of individuals; while Section 7 provides certain penalties for failure to comply with the law.

Section 8 of the Act reads as follows:

"All acts and parts of acts inconsistent with the provisions of this act are hereby repealed."

Since the Act of 1914 permits the intrastate shipment of liquor into local option territory, the question presented by this appeal is: Did the Act of 1914 repeal Section 2569a of the Kentucky Statutes?

For the Commonwealth it is contended that the two laws are to be treated as the whole law upon the subject; that Section 2569a, as supplemented by the Webb-Kenyon Act, makes it unlawful to transport liquors from one point within this State to a point in local option territory within this State, except to licensed physicians and druggists, regardless of the intention of the consignee with reference to the same; and also makes it unlawful to transport from a point in some other State to a point in local option territory, in this State, any intoxicating liquor intended to be used by the consignee in violation of the laws of this State; while the Act of 1914 recognizes the right of the consignee to import liquor into this State, and also the right of the common carrier to transport and deliver liquors from other States to points within local option territory in this State, provided the consignee intended to use such liquors for some legitimate purpose.

But is this a reasonable interpretation to be given to the Act of 1914?

Section 2569a, *supra,* being the Act of 1906, prohibits all shipments of liquor into local option territory, while the Act of 1914 permits such shipments, under the conditions therein prescribed, and expressly repeals all laws inconsistent therewith.

The Legislature had ample power to change the law; and if· it·did change it, it·is· not within our province to question the wisdom of its act; we have only to ascertain the intention of the legislative body.

In· our opinion, it is clear that both laws cannot be enforced; the earlier must yield if the last is effective.

It was aptly said in Grigsby v. L. & N. Ry. Co., 152 Ky., 165, that the object of construction·is to arrive at the intention of the Legislature.

And, in Hodge·v. Bryan, 149 Ky., 110, we further said, that in construing a statute we must take into consideration the purpose of the statute.

In Lewis' Sutherland on Statutory Construction, (2d Ed.) Section 246, it is said:

"Where a statute repeals all former laws within its purview, the intention is obvious, and is regularly recognized to sweep away all existing laws upon the subjects with which the repealing act·deals."

Furthermore, the reason for the enactment of a statute must enter into its construction. Lanferman v. Vanzile, 150 Ky., 751.

In Graham v. Luckett, 6 B. M., 154, the court said:

"If a subsequent statute requires the same, and also more than a former statute had made sufficient, this is in effect a repeal of so much of the former statute as declares the sufficiency of what it prescribes. And if the last act professes, or manifestly intends to regulate the whole subject to which it relates, it necessarily supersedes and repeals all former acts, so far as it differs from them in its prescriptions. The great object, then, is to ascertain the true interpretation of the last act. That being ascertained, the necessary consequence is, that the legislative intention thus deduced from it must prevail over any prior inconsistent intention to be deduced from a previous act."

And in the late case· of the Commonwealth v. International Harvester Co., 131 Ky., 570, the same rule was again announced in the following terms:

"When two or·more statutes are enacted at different sessions of the Legislature, all having the· same subject, the rule is, they are to be treated in·*pari materia*. It is thus .stated in Sutherland· on Statutory Construction, Section· 238: 'One who' contends that a·section of an act must·not be read literally must·be able to·show one of two things: either that there ·is some ··other section

which cuts down or expands its meaning, or else the section itself is repugnant to the general purview. The question for the court is, what did the Legislature. really intend to direct? And this intention must be sought in the whole of the act, taken together, and other acts in *pari materia.*' It is not the custom of Legislatures to declare their purposes as such. Legislation is usually enacted from time to time bearing on particular subjects. The courts presume that the Legislature intended all its enactments on a given subject to constitute a consistent treatment within constitutional limitations of the whole subject.''

It has ever been the rule in this State, as elsewhere, that where the Legislature has passed an act which is repugnant to some other statute then in existence, it has the effect of superseding the earlier act. This is an elementary rule of construction. Buchanan v. Commonwealth, 95 Ky., 336; Schwartz v. Boswell, 156 Ky., 106.

Applying these well settled rules of construction to the Act of 1914, we find it impossible to avoid the conclusion that it repealed Section 2569a. Section 8 of the Act of 1914 expressly declares its intention to repeal ''all acts and parts of acts'' inconsistent with the provisions of that act. That the provisions are inconsistent, and that the Act of 1914 was intended to constitute the whole law upon the subject of intrastate shipments, is easily apparent, when the two laws are contrasted.

It will be noticed that Section 1 of the Act of 1914 includes a new provision, making it unlawful for any one to ship any of the liquors therein mentioned, to a minor. Section 2569a absolutely prohibited the shipment of liquor from ''wet'' territory into ''dry'' territory; it only permitted the individual to carry it with him, in such cases, for his personal use. But, when we come to read Section 2 of the Act of 1914, it makes it unlawful for any one to ship liquor into prohibition territory, or to receive any such liquor, unless the package containing it be marked, giving the name and address of the consignor, the name and address of the consignee, and the statement that the liquor is for the personal and family use of the consignee, or for medicinal, chemical, scientific or sacramental purposes. The Act of 1914 makes intrastate shipments for personal use lawful; Section 2569a made such shipments unlawful.

Section 2569a limited the amount of liquor that the traveler might carry with him for his personal use, into

"dry" territory to one gallon; the Act of 1914 does not limit the quantity.

Furthermore, the third section of the Act of 1914 gives an elaborate system of espionage, above set forth. It requires the carrier to make a record of every shipment in a book, which shall show the amount and kind of liquor received; the name and address of the consignee, and the purpose for which it is intended to be used; and it makes said book a public record, open to the inspection of the world. These provisions are all new, and are inapplicable to Section 2569a, which prohibited such shipments.

It is plain, therefore, that the provisions of the Act of 1914 are wholly inconsistent with Section 2569a of the Kentucky Statutes.

The conclusion cannot be avoided that in passing the Act of 1914 the Legislature intended to, and did place the dealer within the State upon precisely the same footing, before the law, as the foreign dealer. To give any other construction to the Act of 1914 would be denying it any meaning or effect whatever.

In reaching this conclusion, we are of opinion the circuit judge was clearly right.

Judgment affirmed.