SOUTHERN EXPRESS COMPANY v. CITY OF HIGH POINT ET ALS.

(Filed 28 October, 1914.)

1. **Intoxicating Liquors—Carrying Into Prohibited Territory—Personal Use—Interstate Commerce—Webb-Kenyon Act—Interpretation of Statutes.**

   Chapter 1014, Public Laws 1907, relating to the city of High Point and providing that it shall be unlawful for any person, etc., to sell or dispose of for· gain, or keep for sale, within the township, any spirituous wines, intoxicating liquors, etc., and that any person, corporation, etc., bringing within these limits any liquors, the sale of which is prohibited by the act, shall be guilty of a misdemeanor and fined or imprisoned, etc., is a valid exercise of legislative power, extending its prohibition to the purposes of sale and not to its receipt of transportation and delivery for personal use; and the importation of such liquor for personal use being lawful under the statute, the Webb-Kenyon law has no application, where interstate shipments are involved.

2. **Intoxicating Liquors—Carrying Into Prohibited Territory—Criminal Law —Equity—Injunction.**

   Where the transportation of intoxicating liquors into prohibited territory is declared a misdemeanor and made punishable by statute, except in certain instances, the carrier must exercise vigilance and sound discretion and take notice of the use to which it is intended to put the liquor; and equity will not undertake to determine upon injunction whether the shipments of liquor are intended for· an illegal or legal purpose. Nor will our courts enjoin the enforcement of the criminal law, at the suit of the carrier, upon the ground that it is threatened with continuous indictments for transporting the liquor to the prohibited territory.

CLARK, C. J., concurs in result.

APPEAL by defendant from *Lane, J.,* heard at chambers in GUILFORD. Motion for a restraining order. The motion was based upon the verified complaint of the plaintiff. His Honor held that upon the complaint, itself, the plaintiff was not entitled to a restraining order. The plaintiff excepted and appealed.

*Watson, Buxton & Watson, Stras & Williams, Winston & Biggs for plaintiff.*

*L. B. Williams for defendant.*

BROWN, J. The plaintiff seeks to enjoin the defendants from the enforcement of a statute of this State, chapter 1014, Public Laws 1907, which reads as follows: "That it shall be unlawful for any person, firm, or corporation to sell or dispose of for gain, or keep for sale within High Point Township, any spirituous wines, malt, or other intoxicating liquors; that any person, firm, or corporation bringing into High Point Township, for delivery to any person, corporation, company, or firm, any liquors, the sale of which is prohibited by this act, shall be guilty of misdemeanor and fined or imprisoned at the discretion of the court."

The plaintiff alleges that the defendant municipal officers of High Point threatened to procure warrants for indictments against the plaintiff, and to arrest it and its agents and subordinates each time they make a delivery of liquors, delivered to it from points without the State, to be transported in interstate commerce to the township of High Point. The plaintiff contends that the said act is null and void in so far as it undertakes to prevent the delivery of liquors in interstate commerce within the said territory.

There are two insuperable objections to the granting of an injunction:

1. The statute sought to be enjoined as to its enforcement is not void, but in our opinion is a valid exercise of legislative power. The power of a State to prohibit within its boundaries the manufacture and sale of intoxicating liquors has been unquestioned since the case of *Mugler v. Kansas*, 123 U. S., 623.

It is also true, as contended by the plaintiff, that the right of an individual to import liquor into a prohibition State for his own personal use is recognized and declared in *Vance v. Vanderhook*, 170 U. S., 468, wherein the Supreme Court of the United States says: "It follows that under the Constitution of the United States, every resident of South Carolina is free to receive for his own use liquor from other States, and that the inhibitions of a State statute do not operate to prevent liquors from other States from being shipped into such State, on the order of a resident, for his own use. But the right of persons in one State to ship liquor into another State to a resident for his own use is derived from the Constitution of the United States, and does not rest on the grant of the State law."

The same question is discussed and decided in *Adams Express Co. v. Kentucky*, 214 U. S., 218. These decisions were made prior to the Webb-Kenyon law, and what bearing that may have upon them it is not necessary for us to decide.

The High Point statute does not undertake to prohibit the plaintiff from bringing into High Point Township for delivery to any one packages of liquor intended for personal use and consumption, or for any other lawful purpose. The law only extends its pains and penalties to any person, firm, or corporation bringing into such territory and delivering liquor therein to be kept for sale. The law is directed solely at the importation of liquor for sale, and not at that imported for personal use, which, so far, has been held to be a lawful purpose.

It must be borne in mind that the General Assembly of North Carolina has not up to this time undertaken to prohibit introduction of liquor into this State for individual consumption. Whether it can do

so, under the Constitution of the United States and of this State, has never been decided by this Court, and is a question not presented by this appeal.

The furthest that the general State law has gone, as affecting an individual who imports liquor for his own use, is to make the possession of more than a certain quantity at one time *prima facie* evidence of a purpose to sell. It is not contended, so far as we know, by any one, where the State permits the importation of liquor for the individual consumption of its citizens, or for any other lawful purpose, that the Webb-Kenyon law has any effect.

The High Point statute, as we have said, prohibits the introduction of liquor by any carrier intended for an illegal purpose, and it is asked, "How can the carrier know or ascertain whether the liquor is intended for sale, or for personal consumption?" That is a question we are not called upon to answer. As pointed out by the Supreme Court of Kentucky, the carrier must exercise vigilance and sound discretion and take notice of the use to which it is intended to put the liquor. *Adams Express Co. v. Kentucky,* 157 S. W., 908.

2. In any prosecution of an indictment under this act it is a valid defense that the liquor was intended for a lawful purpose, and therefore the courts will not undertake to determine upon injunction proceedings whether shipments of liquor are intended for an illegal or a legal purpose. We admit, as contended by the plaintiff, that the Supreme Court of the United States has departed sometimes from the doctrine enunciated in *Fitts v. McGee,* 172 U. S., 516, and that injunctions have been issued by the Federal courts prohibiting the enforcement of State statutes where such excessive penalties and punishments are imposed upon common carriers, and their officers, that they are deterred from testing the validity of such statutes in the State courts upon criminal proceedings. This subject is fully discussed in *Ex parte Young,* 209 U. S., 124, by *Mr. Justice Peckham,* and in an elaborate dissenting opinion by *Mr. Justice Harlan.* In that and subsequent cases the Court proceeded on the theory that the legislation was so drastic that the corporation and its officers were intimidated from testing it in the usual manner by the severity of the punishment imposed.

Even if we were inclined to depart from our own well settled precedents, no such case is made out by the complaint in this case, and as we have before remarked, it would be utterly impracticable to determine, by injunction proceedings, the legality of such shipments of liquor. The courts of this State will not undertake by injunction to enjoin the enforcement of the criminal law. The party charged with crime must make his defense and plead to the indictment, and if convicted, he may, by appeal, bring his case before this Court. This must

be especially true as to the statute, which we declare to be valid. *S. v. R. R.*, 145 N. C., 516; *Paul v. Washington,* 134 N. C., 380.

Upon a consideration of this appeal, we are of opinion (1) that the High Point act is a valid exercise of legislative power, and does not prohibit the bringing of liquor into High Point for a lawful use; (2) that upon the facts presented in the record, the injunction was properly refused.

CLARK, C. J., concurring in result: I concur that an injunction does not lie to restrain the State against executing its criminal laws. The defendant has a full remedy by raising any objection to the validity of the law upon the trial of the indictment for the criminal offense. Equity never interferes, especially by injunction, when there is a full remedy at law. Further, it is settled beyond controversy that the State has the power to prohibit within its boundaries the manufacture and sale of intoxicating liquors, and that under the Webb-Kenyon law it has the same police power in regard to intoxicating liquors imported from another State as if manufactured here.

I do not concur, however, in the construction of chapter 1014, Laws 1907. That chapter (sec. 1) makes it "unlawful for any person, firm, or corporation to sell or dispose of for gain, or keep for sale, within High Point Township, any spirituous wines, malt, or other intoxicating liquors." A separate paragraph (sec. 5) makes it a misdemeanor for "any person, firm, or corporation to bring into High Point Township for delivery to any person, corporation, company, or firm any liquors the sale of which is prohibited by this act." The liquors the "sale of which is prohibited by this act" are "any spirituous wines, malt, or other intoxicating liquors." There is in this no intimation that such liquors, if to be used by the receiver for his own purposes, are permitted to be brought in. There is no discrimination in this act permitting the bringing in of liquors by reason of the use to which the liquors are to be applied.

There is nothing in the State or Federal constitutions which prohibits the people of North Carolina, speaking through their Legislature, to prohibit the manufacture of intoxicating liquors even solely for one's own use. This is held in *Mugler v. Kansas,* 123 U. S., 623. It follows that the Legislature can equally prohibit the importation of such liquors by any person for his own use, and *a fortiori* it can forbid a common carrier to bring in or import such liquors, irrespective of whether it is for the consignee's own use or not.

It was once contended that liquor was a necessity for medical purposes. But it has never been held to be such as a matter of law, and as a matter of fact it is public knowledge that the State Medical

Society, comprising a large number of the ablest medical practitioners of this State, at their recent State Convention in Raleigh, held, by a unanimous vote, that intoxicating liquors were not necessary for use in illness or for other medical purpose. Besides, there is no evidence in this case that these liquors are imported for the consignee's own use or for medical purposes. Even conceding that they were, the public policy of the State is determined by its people, speaking through their Legislature, and not by the courts. Those who would like for liquors to be either manufactured or imported by a consignee, if for his own use, should apply to the Legislature and not to the courts.

If the law can prohibit a man from bringing liquor into the State by manufacturing it, solely for his own use, it can prohibit him from importing it from another State solely for his own use, and prohibit the common carrier from bringing it. If the law can forbid a bar-keeper from selling half a gill of whiskey, it can forbid the purchaser from buying that half a gill. If the law can prohibit, as we have held, any one to have on hand more than a gallon of whiskey at a time, it can forbid him from having any at all. These are matters of public policy which must be determined by the Legislature and which the courts cannot meddle with.

It was formerly held that the State police powers do not attach to intoxicating liquors brought in from another State until after delivery to the consignee. But the Webb-Kenyon law, ratified 1 March, 1913, 37 U. S. Statutes, 699, has taken intoxicating liquors out of the domain of interstate commerce when shipped into a Prohibition State. In *U. S. v. R. & N. Co.,* 210 Fed., 318, *Bean, United States District Judge,* held that the Idaho statute of 1909, page 9, which forbade the shipment of liquor, even when the liquor is intended for the personal use of the consignee, "is not unconstitutional, but was a valid exercise of the police powers of the State." He quoted that the Webb-Kenyon act prohibits "the shipment or transportation of intoxicating liquors of any kind, in any manner, or by any means whatever, from one State into another, which liquor is intended by any person interested therein to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such State," and further held that the Idaho statute being "broad enough to make unlawful all intrastate shipments of intoxicating liquors, although intended for the personal use of the consignee," that since the passage of the Webb-Kenyon law it is unlawful for any common carrier to carry liquors into Idaho, even though they are for the personal use of the consignee. The same ruling has been made by the Delaware Supreme Court, *S. v. R. R.,* 88 Atl., 571, which is cited by *Judge Bean.*

In the Delaware case *Chief Justice Pennewill* refused to follow the only case on the other side of this question in which the Kentucky Court of Appeals, in *Express Co. v. Kentucky,* 157 S. W., 908, held that the express company was not guilty in carrying from Tennessee into local option territory in Kentucky liquors which "were intended by said consignees respectively for their personal use and were so used by them, and were not intended by them to be sold contrary to law, and were not so sold by them." The *Chief Justice* says: "We think the person to whom the liquor is given for transportation and delivery is interested therein within the meaning of the Federal law, and that if he intends when he receives, or has in his possession, the liquor to carry it from a point in one State to local-option territory in another State, into which the carrying is unlawful, the transaction is not protected by the commerce laws of the Federal Constitution and is prohibited by the Webb-Kenyon law, it being a violation of the law of the State into which the liquor is carried. And it may also be said that if such person carries or delivers the liquor into a local-option territory where such carrying or delivery is unlawful, it is used by him 'in violation of the law' of this State within the meaning of the Federal statute. If this conclusion is not correct, then the Webb-Kenyon law furnishes no remedy at all for the evils it was designed to cure." He further adds: "If no one is interested in an interstate shipment of liquor, within the meaning of the Federal statute, except the consignee or a consignor who ships it for the purpose of sale, then, in effect, the Webb-Kenyon act is but a reënactment of this law passed by Congress in 1890, and nothing has been accomplished by the later act, because, in order to show that it applies in any case, it would be necessary, as already said, to prove a sale of the liquor by the consignor or consignee upon or after delivery at destination. How, otherwise, would it be possible to establish the fact that the liquor was intended by the consignor or consignee to be received, possessed, or used in violation of the State law? The mere possession is not unlawful, and if transportation is not contemplated by the Webb-Kenyon act, nothing but a sale would prove an intention to violate such law. It may be argued that it is only necessary to prove that it was the intention of the consignor or consignee to sell the liquor, to bring the shipment within the provisions of the act; but, practically, how can the purpose of the intention be shown without proving the consummated act—the sale?"

The same view of the Webb-Kenyon law is taken by the Supreme Court of Iowa in *S. v. Express Co.,* 145 N. W., 451, in which are cited many other instances in which Congress has withdrawn articles from the protection of interstate commerce or forbidden interstate shipments, as the act of 1803, while Jefferson was President, forbidding the

transportation of free negroes from one State into any other in which they were forbidden to reside. 2 U. S. Statutes, 205; the White Slave Act, *Hoke v. U. S.,* 227 U. S., 308; the Lacy Act forbidding transportation in interstate commerce of game killed in violation of State law, U. S. Criminal Code, sec. 242; the Wilson Act which, even as construed, prohibited interstate shipment of liquors in the original package, and others. To these may be added the prohibition of interstate carriage of lottery tickets, 188 U. S., 358, and *Plumley v. Mass.,* 155 U. S., 474, sustaining the prohibition of the sale of oleomargarin not colored yellow, although it had been brought in from another State. These latter two cases are cited in the Delaware case above quoted. Another late case sustaining the same view of the Webb-Kenyon law and its constitutionality is *S. v. Doe,* 139 Pac., 1169, rendered by the Supreme Court of Kansas.

*Whether it shall be unlawful for a barkeeper to sell a drink to a man for his own use, or for a common carrier to bring him a larger quantity for the same use, are equally matters for the Legislature alone to determine.*

The Legislature might in this act have excepted liquors "brought in for medicinal, scientific, and mechanical purposes, or for personal use of the consignee." But it did not see fit to do so. These are not, therefore, valid defenses, and the common carrier bringing liquor into High Point for any purpose is, in the language of the Webb-Kenyon law, "possessed" of such package to be delivered "in violation of the law of this State."